UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

---

In re

Gregory Lewis Addison,
        Debtor.

Chapter 7

Case No.: 05-40237-svk

---

American Family Mutual Insurance Company,
        Plaintiff,
   v.
Gregory Lewis Addison,
        Defendant.

Adv. No.: 05-2583

---

**Memorandum Decision**

---

     Gregory Lewis Addison (the "Debtor") filed his chapter 7 petition on October 11, 2005, and American Family Mutual Insurance Company (the "Plaintiff") timely filed its nondischargeability Complaint alleging that the Debtor converted a vehicle owned by Plaintiff's insured, Lewis P. Williams, who is the Debtor's father. Specifically, the Complaint alleges that "the defendant stole plaintiff's insured's motor vehicle causing damage to plaintiff's insured in the amount of $13,098.56," which is a total of $12,098.56 in physical damages, plus two $500 deductibles. The Debtor denied that he "stole" the vehicle or that he had the intent to steal it, and asserted that he had every intention of returning the vehicle on the night it was used.

     Unable to come to a resolution of the matter, the parties proceeded to trial, where the evidence presented included that on Christmas Day 2002, the Debtor returned to his father's house after visiting relatives. Although the Debtor did not live with his father at that time, they ate dinner together, and the Debtor asked if he could borrow his father's 2001 Ford Explorer. Although he had borrowed his father's car on previous occasions, this time his father did not give the Debtor permission to use the car. The Debtor waited until his father left the room and took the keys anyway. The Debtor drove off and, on his way to his girlfriend's house, lost control of the Explorer on a patch of ice and collided with a parked car.

     The Debtor's father subsequently made a claim to the Plaintiff for physical damage to his vehicle. The damage to the 2001 Ford Explorer totaled $9,242.31, and the damage to the other vehicle (a 2001 Suzuki) was $2,871.25; the total paid by the Plaintiff for repairs is $12,113.56. In addition to these payments, the Plaintiff claims a $500 deductible for each vehicle, for a total of $13,113.56.[1]

---

[1] It is not clear why this $13,113.56 figure differs from the figure in the Complaint: $13,098.56; it is also not apparent why the deductibles would be part of the Plaintiff's damages.

The parties presented their arguments at the conclusion of the trial. The Plaintiff argued that for a debt to be nondischargeable under Bankruptcy Code § 523(a)(6) and *Kawaauhau v. Geiger*, 523 U.S. 57 (1998), a debtor must have committed an intentional tort that caused injury to the creditor. The tort here, the Plaintiff argued, is the conversion of the Ford Explorer. The Debtor, on the other hand, urged that the *Geiger* Court interpreted § 523(a)(6) to mean that a debtor must have intentionally caused a specific injury to the creditor. Further, the facts in this case do not rise to the level of intent discussed in *Geiger* because although the Debtor intended to take his father's vehicle, he did not intend to crash it. Rather than ruling on the issue immediately, the Court took the matter under advisement to take a closer look at *Geiger* and other relevant case law. This Memorandum Decision constitutes the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052.

Section 523(a)(6) excepts from discharge any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6) (2005). "To fall within the exception of section 523(a)(6), the injury to an entity or property must have been willful and malicious." 4 Lawrence P. King, *Collier on Bankruptcy* ¶ 523.12, at 523-90 (15th ed. rev. 2003).

The Supreme Court confronted § 523(a)(6) head-on in *Kawaauhau v. Geiger*, and decided what constitutes a "willful and malicious" injury. In *Geiger*, a patient obtained a large malpractice award against her former doctor after his treatment led to the amputation of her right leg. 523 U.S. at 59. The doctor then filed for bankruptcy relief, attempting to discharge this debt. *Id*. at 60. The patient requested that the debt be held nondischargeable, asserting that the doctor's actions fit within the "willful and malicious injury" requirement of § 523(a)(6). *Id*. The Supreme Court, after parsing the language of the statute in light of the Court's prior decisions, determined that this section requires more than mere reckless or negligent conduct. *Id.* at 64. As the Court noted,

> The word "willful" in (a)(6) modifies the word "injury," indicating that nondischargeability takes a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury. Had Congress meant to exempt debts resulting from unintentionally inflicted injuries, it might have described instead "willful acts that cause injury." Or, Congress might have selected an additional word or words, *i.e.*, "reckless" or "negligent," to modify "injury." Moreover, as the Eighth Circuit observed, the (a)(6) formulation triggers in the lawyer's mind the category "intentional torts," as distinguished from negligent or reckless torts. Intentional torts generally require that the actor intend "the *consequences* of an act," not simply "the act itself." Restatement (Second) of Torts § 8A, Comment *a*, p. 15 (1964) (emphasis added).

*Id.* at 61-62 (emphasis in original).

An "accident" generally does not satisfy § 523(a)(6), since that section requires something more than negligent or reckless conduct. *See Geiger*, 523 U.S. at 61-62. A variety of cases support this conclusion. *See, e.g., Morse v. Soda (In re Soda)*, 261 B.R. 342, (Bankr. D.

Conn. 2001) (debt arising from debtor crashing his boat into another boat was dischargeable since the debtor did not intend to collide with the other boat, and thus not "willful and malicious" under § 523(a)(6)); *Manna v. Havranek (In re Havranek)*, 2000 WL 277171 (Bankr. N.D. Ill.) (debt arising from debtor driving around shooting paint balls at objects, accidentally shooting the plaintiff, was dischargeable because the debtor did not intend to injure the plaintiff).

A very recent case, decided just days after this trial, provides further insight into § 523(a)(6) and *Geiger*. In *Dcfs Trust v. Goldstein (In re Goldstein)*, 2006 WL 1806500 (Bankr. D. Mass.), a debtor who was leasing a vehicle from the plaintiff, subleased the car to another person. When that sublessee attempted to return the vehicle to the debtor, she delivered the car to a person who worked for the "sublease agency"; the car then disappeared. *Id.* at *6. The court analyzed the creditor's § 523(a)(6) allegation, and stated:

> As the Supreme Court has held, "willful injury" requires a showing of intent to injure. [Citing *Geiger*]. This is a subjective standard, focusing on what the Debtor actually intended. Some courts have taken the position that it would be sufficient if the debtor believed that injury was substantially certain to occur as result [sic] of his or her behavior. I need not determine the merits of this lesser standard but merely note that it too is a subjective standard, focusing on the debtor's actual belief, and that it requires belief that the injury is "substantially certain" to occur, not merely that the debtor's conduct will create a risk of the injury.

*Id.* at *8. Further, the court noted that "[the debtor] did not believe that his transferring of possession of the vehicle to [the sublessee] under the sublease was substantially certain to result in the vehicle's being permanently lost to [the creditor]." *Id.* Because the debtor did not possess the requisite intent, the injury was not "willful" and the creditor could not prevail on its claim under § 523(a)(6).

This district has adopted a similar "substantially certain" test where it is not clear that a debtor intended a specific harm. In other words, "a person acts willfully under § 523(a)(6) when he intends to injure or when he is substantially certain that his conduct will cause injury to the creditor." *Bukowski v. Patel*, 266 B.R. 838, 844 (E.D. Wis. 2001). This view has also been adopted by other courts in the Seventh Circuit. *See, e.g., Fidelity Fin. Servs. v. Cox (In re Cox)*, 243 B.R. 713, 718 (Bankr. N.D. Ill. 2000); *Bank Calumet v. Whiters (In re Whiters)*, 337 B.R. 326, 343 (Bankr. N.D. Ind. 2006).

Application of the test to the facts here compels the conclusion that the debt is dischargeable. Although the Debtor may have committed an intentional tort (conversion) by taking his father's vehicle without permission, the damages to the vehicle caused by the accident were not intended by the Debtor and were not substantially certain to occur as a result of the conversion. In Wisconsin, the tort of conversion consists of: "(1) intentionally controlling/taking property belonging to another; (2) controlling/taking property without the owner's consent; and (3) those acts resulting in serious interference with the rights of the owner to possess the property." *Bruner v. Heritage Cos.*, 225 Wis. 2d 728, 736, 593 N.W.2d 814, 818 (Ct. App.

3

1999). "In an action for conversion, the measure of damages generally is the personal property's market value at the time of conversion plus interest to the date of trial." Russel M. Ware, *The Law of Damages in Wisconsin* § 17.39, at 22 (4th ed. 2005 & Supp. 2006). However, if the defendant is not permanently deprived of the property, the damages can be significantly reduced: "a defendant may mitigate the plaintiff's damages by returning the property, even after suit is commenced, thereby leaving the plaintiff with nominal damages only." *Id.* § 30.8, at 6. Under this standard, the damages from the conversion here would have been minimal since the car was returned. It is the monetary damage from the *collision* rather than the *conversion* that the Plaintiff seeks to recover.

It is clear from the Debtor's uncontroverted and credible testimony that the physical damage caused to the Ford Explorer was unintentional. The Debtor had borrowed and returned his father's car without incident on prior occasions. The Debtor and his father testified that no quarrel or altercation preceded the Debtor's borrowing of the car, as would suggest that the Debtor acted with willful and malicious intent. As a result, the Debtor could not have intended this injury under the test enunciated in *Geiger*. Even using the "substantially certain" test, the Debtor did not believe that by driving to his girlfriend's house, he was substantially certain to collide with a parked car.

Without the requisite intent to cause the damage to the Ford Explorer, the debt arising from the Debtor's actions cannot be excepted from discharge under § 523(a)(6). A separate Order will be issued denying the relief requested in the Complaint.

Dated: July 11, 2006

By the Court:

Susan V. Kelley
U.S. Bankruptcy Judge

4

Case 05-02583-svk    Doc 22    Filed 07/11/06    Page 4 of 4